UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN E.L.,<br><br>          Plaintiff,<br><br>    v.<br><br>MOISES BECERRA, et al.,<br><br>          Defendants. | Case No.  23-cv-03646-KAW<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

On July 24, 2023, Petitioner Adrian E.L. filed a petition for writ of habeas corpus.  (Pet., Dkt. No. 1.)  Petitioner has been detained since June 3, 2022, and is currently being held at Mesa Verde ICE Processing Center ("Mesa Verde"), pending removal proceedings under the Immigration and Nationality Act ("INA").  (Pet. ¶¶ 2*, 6*.[1])  An immigration judge ("IJ") found Petitioner statutorily ineligible for bond pursuant to the INA's mandatory detention requirements, 8 U.S.C. §1226(c), and thus no bond hearing has been held to determine whether Petitioner's lengthy civil incarceration is warranted.  (Pet. ¶ 3*.) Petitioner asserts that his prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment, and he seeks his release within fourteen days unless a bond hearing is set.  (Pet. ¶¶ 4*, 5*.)

Having considered the parties' filings, the relevant legal authority, and the arguments made at the May 16, 2024 hearing, the Court GRANTS Petitioner's petition for a bond hearing.

---

[1] For unknown reasons, Petitioner restarted the numbers of the paragraphs partway through the Petition, such that there are multiple paragraphs 1-19.  To avoid confusion or the need to renumber all paragraphs from page 5 on, the Court refers to the original paragraphs 1-19 with an * (*e.g.*, ¶ 1*, ¶ 2*, ¶ 3*, etc.), and the repeated paragraphs 1-19 without an *.

United States District Court
Northern District of California

# I.   BACKGROUND

Petitioner was born in Mexico in 1988, and has continuously resided in California since he was three years old.  (Pet. ¶ 5.)  After the death of his stepfather when Petitioner was thirteen years old, Petitioner joined a neighborhood gang.  (Pet. ¶ 6.)  When he was eighteen, Petitioner was in a fight with a rival gang member.  (Pet. ¶ 7.)  In May 2007, Petitioner pled guilty to attempted murder and was sentenced to seven years in prison, with a consecutive ten-year sentence for a firearm enhancement.  (Pet. ¶ 7.)  While in prison, Petitioner was convicted of violating California Penal Code § 4573.6 (possession of controlled substances in prison).  (Pet. ¶ 7.)

In 2018, Petitioner disassociated from the gang and participated in rehabilitative and skills programming.  (Pet. ¶ 9.)  Petitioner was released from prison early as a result of his rehabilitative work.  (Pet. ¶ 9.)  Upon his release, Petitioner was detained by the Department of Homeland Security ("DHS") on June 3, 2022.  (Pet. ¶ 10.)  That same day, DHS served Petitioner with a Notice to Appear, alleging that Petitioner's attempted murder conviction rendered him removable. (Pet. ¶ 11, Exh. B.)

On July 12, 2022, the IJ held a contested removability hearing and custody redetermination hearing.  (Pet. ¶¶ 14, 15, Exh. J.)  At the hearing, the IJ found that Petitioner was not eligible for bond consideration because of his criminal conviction and denied Petitioner's request for a custody determination.  (Pet. ¶ 15, Exh. J at 6, Exh. K.)

On July 19, 2022 and September 22, 2022, the IJ held a continued contested removability hearing, and considered Petitioner's application for protection under the Convention Against Torture ("CAT").  (Pet. ¶¶ 16, 17.)  On September 22, 2022, the IJ held a hearing on Petitioner's CAT application, and scheduled a further hearing at which the decision would be issued.  (Pet. ¶ 17.)  On October 25, 2022, the IJ denied Petitioner's CAT application and found Petitioner removable.  (Pet. ¶¶ 18, 19.)

After the Board of Immigration Appeals ("BIA") denied Petitioner's appeal of the IJ's decision, Petitioner filed a petition for review of the BIA's decision with the Ninth Circuit on March 9, 2023 ("March 2023 Petition").  (Pet. ¶¶ 20-21.)  Petitioner also filed a motion to reopen with the BIA, which was denied on April 11, 2023.  (Pet. ¶ 22.)  Petitioner then filed a second

1  petition for review of the denial of the motion to reopen on May 5, 2023 ("May 2023 Petition"),

2  which was consolidated with the March 2023 petition.  (Pet. ¶¶ 22, 23.)

3      On July 24, 2023, Petitioner filed the instant action, asserting that his prolonged detention

4  without a bond hearing violated due process.  (Pet. ¶ 50.)  Thus, Petitioner sought an order to

5  release Petitioner within fourteen days unless a bond hearing was held.  (Pet. at 21-22.)  On

6  August 15, 2023, the Government filed its return.  On August 22, 2023, Petitioner filed his

7  traverse.  (Pet. Traverse, Dkt. No. 11.)

8      On March 26, 2024, the Ninth Circuit denied the March 2023 petition, but granted the May

9  2023 petition.  *E.L. v. Garland*, No. 23-358, No. 23-855, 2024 WL 1281136, at *2.  The Ninth

10  Circuit remanded the case to the BIA to apply the correct legal framework.  *Id.*  On April 9, 2024,

11  the Government provided notice of the Ninth Circuit's ruling, and argued that the case was moot

12  because the Ninth Circuit denied the motion for a stay of removal in the March 2023 petition, even

13  though the Ninth Circuit granted the motion for a stay of removal in the May 2023 petition.

14  (Gov't Not. Re Mootness at 1, Dkt. No. 23; *see E.L.*, 2024 WL 1281136, at *1 n.1.)  On April 16,

15  2024, Petitioner filed his response on the mootness issue.  (Pet. Resp. re Mootness, Dkt. No. 25.)

16  On May 23, 2024, the Ninth Circuit granted Petitioner's motion to stay the mandate.  (Dkt. No.

17  28.)

18      Throughout these proceedings, Petitioner continues to be detained at Mesa Verde without a

19  bond hearing.  (*See* Pet. ¶ 24.)

20                          **II.    LEGAL STANDARD**

21      The INA "authorizes the detention of aliens awaiting removal from the United States."

22  *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018).  Section 1226 "generally

23  governs the process of arresting and detaining that group of aliens pending their removal."

24  *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018).  "Section 1226(a) sets out the default rule: The

25  Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision

26  on whether the alien is to be removed from the United States.'"  *Id.* (quoting 8 U.S.C. § 1226(a).)

27  Except as provided by § 1226(c), which carves out a category of aliens who may not be released

28  under § 1226(a), "the Attorney General 'may release' an alien detained under § 1226(a) 'on bond

*United States District Court*
*Northern District of California*

3

1    or . . . conditional parole.'" *Id.* (quoting 8 U.S.C. §1226(a)).

2                           **III.    DISCUSSION**

3        **A.    Jurisdiction**

4        As an initial matter, the Government argues that the case should be dismissed per *Rumsfeld*

5    *v. Padilla*, 542 U.S. 426 (2004), because the case should have been brought in the Eastern District

6    of California, *i.e.*, the district in which Petitioner is confined.  (Gov't Return at 6, 9.)  "Courts in

7    this district repeatedly have held . . . that *Padilla* does not extend to cases such as this one where

8    the immediate custodian lacks any actual authority over the immigrant detainee." *Perera v.*

9    *Jennings*, No. 21-cv-04136-BLF, 2021 U.S. Dist. LEXIS 110194, at *6-7 (N.D. Cal. June 11,

10   2021); *see also Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 U.S. Dist. LEXIS 56944, at *6 n.1

11   (N.D. Cal. Mar. 31, 2023) (citing numerous cases rejecting the Government's reliance on *Padilla*).

12   Rather, because Respondent Moises Becerra, the San Francisco Field Office Director, "is based in

13   the Northern District, the Court has jurisdiction over him and [Petitioner's] petition." *Pham*, 2023

14   U.S. Dist. LEXIS 56944, at *11.

15       **B.    Mootness**

16       Next, the Government argues that the case is moot because Petitioner is no longer being

17   held under § 1226, but 8 U.S.C. § 1231.  (Gov't Not. re Mootness at 1.)  Section 1231 concerns

18   the detention of aliens ordered removed and requires that the order of removal be

19   "administratively final."  8 U.S.C. § 1231(a)(1)(B).  As Petitioner points out, however, Plaintiff's

20   detention remains under § 1226 because his removal is not administratively final as further agency

21   proceedings before the BIA are necessary.  (Pet. Resp. re Mootness at 4-5.)  The Court also notes

22   that the Ninth Circuit's mandate denying the March 2023 petition has been stayed.  (*See* Dkt. No.

23   28.)  In any case, the case is not moot because Petitioner continues to be detained, and the Court

24   can provide effective relief in the form of a bond hearing.

25       **C.    Due Process Violation**

26       As an initial matter, the Government argues that because Petitioner is being held under §

27   1226(c), he is not entitled to a bond hearing per *Demore v. Kim*, 538 U.S. 510 (2003).  (Gov't

28   Return at 10, 14.)  In other words, the Government contends that Petitioner's "ongoing detention,

United States District Court
Northern District of California

4

pending a final determination of his removability, does not violate his due process rights as it 'necessarily serves the purpose of preventing deportable criminal aliens . . . from fleeing prior to or during their removal proceedings[.]'"  (Gov't Return at 15 (quoting *Demore*, 538 U.S. at 528.)

Courts in this district have repeatedly found that neither § 1226(c) nor *Demore* preclude the relief being sought in this case.  In *Demore*, the Supreme Court found that "mandatory detention under § 1226(c) was not per se unconstitutional."  *Gonzalez v. Bonnar*, Case No. 18-cv-5321-JSC, 2019 U.S. Dist. LEXIS 12636, at *13 (N.D. Cal. Jan. 25, 2019).  "*Demore*, however, focused on the brevity of the detention and concluded that because the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases there was no due process issue."  *Id.* at *13-14 (quotation omitted).  Thus, courts have repeatedly found that *Demore* does not apply where a petitioner has been detained for over a year, even under § 1226(c).  *See id.* at *14 (considering detention of at least fifteen to seventeen months); *De La Rosa v. Murray*, No. 23-cv-06461-VC, 2024 U.S. Dist. LEXIS 93802, at *9-10 (N.D. Cal. Apr. 8, 2024) (finding that "*Demore* provides little support" to the Government's argument that detention under § 1226(c) was constitutional where the petitioner "has been detained for two years, considerably longer than the detention at issue in *Demore*"); *De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 U.S. Dist. LEXIS 169552, at *14-16 (N.D. Cal. Sep. 30, 2019) (finding that the petitioner was entitled to a bond hearing where the petitioner's detention was "more than twice the length of the 'brief' detention approved by the Supreme Court in *Demore*"); *Oropeza v. Becerra*, No. 22-cv-09126-DMR, 2023 U.S. Dist. LEXIS 76431, at *16 (N.D. Cal. May 2, 2023) (distinguishing *Demore* where the petitioner "has been detained for nearly two years--a considerably longer period of time than the detention at issue in *Demore*"); *Doe v. Becerra*, No. 23-cv-04767-PCP, 2023 U.S. Dist. LEXIS 214687, at *22 (N.D. Cal. Dec. 1, 2023) ("[P]rocedural due process entitles Mr. Doe to a bond hearing after two years of detention.").

Petitioner has been confined since June 3, 2022, over two years.  (Pet. ¶ *6.)  This is considerably longer than the detention at issue in *Demore*.  The Court thus proceeds to consider whether Petitioner has suffered a due process violation.  Here, Petitioner makes two due process

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    claims.  First, Petitioner asserts that he is entitled to a new bond hearing because he has been

2    confined for at least six months.  (Pet. ¶ 36.)  Second, Petitioner contends that his detention has

3    become unreasonably prolonged under the *Mathews* balancing test, likewise entitling him to a new

4    bond hearing.  (Pet. ¶ 39.)

5           At least one court in this district has found a bright line rule "that detention becomes

6    prolonged after six months and entitles [a detainee] to a bond hearing."  *Rodriguez v. Nielsen*, No.

7    18-cv-04187-TSH, 2019 U.S. Dist. LEXIS 4228, at *18 (N.D. Cal. Jan. 7, 2019).  Other courts,

8    however, have eschewed a bright line rule in favor of conducting an individualized due process

9    analysis under *Mathews*.  *See Oropeza*, 2023 U.S. Dist. LEXIS 76431, at *17; *De La Rosa*, 2024

10   U.S. Dist. LEXIS 93802, at *10.  Per *Mathews*, the Court must consider three factors: (1) "the

11   private interest that will be affected by the official action," (2) "the risk of an erroneous

12   deprivation of such interest through the procedures used, and the probable value, if any, of

13   additional or substitute procedural safeguards," and (3) "the Government's interest, including the

14   function involved and the fiscal and administrative burdens that the additional or substitute

15   procedural requirement would entail."  424 U.S. 319, 335 (1976).  Here, the Court finds a due

16   process violation under the *Mathews* balancing test, and thus does not consider whether there is a

17   bright line rule.

18          First, the private interest at stake is Petitioner's freedom.  "'The private interest here --

19   freedom from prolonged detention -- is unquestionably substantial.'"  *De La Rosa*, 2024 U.S. Dist.

20   LEXIS 93802, at *11 (quoting *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)); *see also*

21   *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("liberty is the norm, and detention prior to

22   trial or without trial is the carefully limited exception").  Again, Petitioner has been detained for

23   over two years without a bond hearing, and there is no reasonably certain end to his detention as

24   his immigration proceedings continue.  *Compare with Oropeza*, 2023 U.S. Dist. LEXIS 76431, at

25   *17-18 (finding a detention of nearly two years "leans heavily toward finding a strong private

26   interest at stake").

27          The Government contends that Petitioner has already "received significant process before

28   the agency, as well as the Ninth Circuit," pointing to his legal proceedings contesting his

6

removability.  (Gov't Return at 17.)  Whether he should be removed, however, is a separate matter from whether he should be *detained* during those proceedings.  Further, to the extent the Government blames Petitioner for any delay by engaging in those legal proceedings, the Court is not persuaded.  Absent any "indication that [Petitioner] acted in bad faith or purposefully sought to delay his proceedings[, h]is interests in his physical freedom are not diminished because he chose to pursue entirely legitimate proceedings to which he is legally entitled."  *Doe*, 2023 U.S. Dist. LEXIS 214687, at *27-28; *see also Romero Romero v. Wolf*, No. 20-cv-08031-TSH, 2021 U.S. Dist. LEXIS 14624, at *12-13 (N.D. Cal. Jan. 26, 2021) ("it ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his appeal.  Nor does the Court find it compatible with our system of government that Petitioner should simply have to forfeit his due process rights because he is choosing . . . to pursue the rights provided to him by our laws.") (internal quotation omitted).  While Petitioner requested some continuances, they appear to be minimal in comparison to the length of his detention and in good faith.  (*E.g.*, Gov't Return, Exh. K (two-week continuance to look for an attorney), L (requesting two weeks to gather evidence),  M (one week continuance to gather evidence), N (1.5 month continuance to gather evidence).)  There is also no suggestion that Petitioner's delays in filing briefs were done for an improper purpose; indeed, the Court notes that Petitioner was unrepresented in many of the prior proceedings.  Accordingly, the Court concludes that the first *Mathews* factor weighs in Petitioner's favor.

Second, the Court considers the value of additional safeguards with respect to the risk of erroneous deprivation of Petitioner's rights.  As Petitioner has never received a bond hearing, "the value of additional procedural safeguards -- i.e., a bond hearing -- is high, because 'Respondents have provided virtually no procedural safeguards at all.'"  *Salesh P. v. Kaiser*, No. 22-cv-03018-DMR, 2022 U.S. Dist. LEXIS 210104, at *23 (N.D. Cal. Nov. 18, 2022) (quoting *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 U.S. Dist. LEXIS 16389, at *7 (N.D. Cal. Jan. 30, 2020)).  While Petitioner received a custody redetermination hearing, the IJ affirmatively stated that he would not consider whether Petitioner was a danger to the community or a flight risk because Petitioner was ineligible for bond due to his criminal conviction.  (*See* Pet. Exh. J at 6.)  Thus, there has never

United States District Court
Northern District of California

7

been an individualized determination of whether or not Petitioner should be detained based on his circumstances. *Compare with Oropeza*, 2023 U.S. Dist. LEXIS 76431, at *20-21 (finding that because evidence about the petitioner's circumstances "had never been considered and weighed by a neutral decisionmaker evaluating the necessity of Diaz's ongoing detention . . . the value of additional procedural safeguards -- i.e., a bond hearing -- is high given the risk of an erroneous deprivation of Diaz's rights.").

The Government responds that Congress had a reason for enacting § 1226(c) and not requiring bond hearings for certain noncitizens, which was upheld in *Demore.* (Gov't Resp. at 18.)  Congress's rationale for enacting § 1226(c), however, does not automatically mean there is no value from an individualized determination. *See De La Rosa*, 2024 U.S. Dist. LEXIS 93802, at *12 (considering the additional safeguard factor and finding that "*Demore* does not address the issue in this case").  Thus, the Court concludes that the second *Mathews* factor weighs in Petitioner's favor.

The last factor concerns the Government's interest.  The Government contends that it has an interest in enforcing immigration matters, including ensuring that Petitioner is removed should he ultimately be found removable.  (Gov't Resp. at 19-20.)  The Government, however, fails to explain how a bond hearing would harm this interest.  As explained in *Doe*:

> Here, the government's interests will still be largely protected if Mr. Doe is given a bond hearing: If the immigration judge determines that Mr. Doe is a flight risk or a threat to the community, he will presumably remain in custody.  If Mr. Doe poses no such risk, the same government interests will be protected even if he is released.

2023 U.S. Dist. LEXIS 214687, at *29-30; *see also Oropeza*, 2023 U.S. Dist. LEXIS 76431, at *20 ("Respondents do not explain how providing Diaz with a bond hearing after 22 months of detention would undermine its interest in enforcing immigration laws and effecting removal.  After all, the purpose of a bond hearing is to inquire whether the noncitizen represents a flight risk or danger to the community.") (internal quotation omitted).  Moreover, the Government does not suggest it faces "any significant additional administrative burdens to hold an individualized bond hearing." *De La Rosa*, 2024 U.S. Dist. LEXIS 93802, at *12; *Doe*, 2023 U.S. Dist. LEXIS 214687, at *30 ("The only remaining interest at issue is the administrative burden of providing a

hearing, but that cost is minimal when weighed against the infringement on liberty interests resulting from Mr. Doe's two-year detention.").  Thus, this factor also favors Petitioner.

Balancing the *Mathews* factors, the Court concludes that Petitioner's continued detention without a bond hearing violates his due process rights.  Accordingly, the Court orders the Government to provide Petitioner with a bond hearing.  At the hearing, the Government bears the burden of justifying Petitioner's continued detention by establishing by clear and convincing evidence that he is a danger to the community or a flight risk.  *Singh*, 638 F.3d at 1203; *see also Oropeza*, 2023 U.S. Dist. LEXIS 76431, at *21-22; *Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 U.S. Dist. LEXIS 60069, at *12-13 (N.D. Cal. Apr. 4, 2023); *Jiminez*, 2020 U.S. Dist. LEXIS 16389, at *10; *Doe*, 2023 U.S. Dist. LEXIS 214687, at *32; *De La Rosa*, 2024 U.S. Dist. LEXIS 93802, at *14; *Gomez v. Becerra*, No. 23-cv-03724-JCS, 2023 U.S. Dist. LEXIS 170758, at *27 n.5 (N.D. Cal. Sep. 25, 2023).

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS the petition for a writ of habeas corpus and ORDERS the Government to provide Petitioner with a bond hearing within **fourteen** days.  At the hearing, the Government must establish by clear and convincing evidence that Petitioner is a flight risk or a danger to the community in order to continue his detention.

IT IS SO ORDERED.

Dated: June 11, 2024

KANDIS A. WESTMORE
United States Magistrate Judge